## Commonwealth v. Haynes

*John D. Gresimer*, for Commonwealth.
*John E. Rydesky*, for defendant.

TRAMBLEY, P. J., May 29, 1952.—This case comes before us on an appeal from a judgment of a justice of the peace of Emporium, Pa., involving article VII, subsec. 5, of the Act of June 3, 1937, P. L. 1225, as amended, 34 PS §1311.724(5). The facts, briefly, which have been agreed upon by both parties, are as follows: Defendant, James Milford Haynes, was arrested on a warrant issued by Sadie A. Hutt, justice of the peace, Emporium, Pa., on November 6, 1950, charged with wilfully and unlawfully failing to re-

move the entrails from three deer, legally killed by defendant while destroying his crops, and transferring the carcasses to a place of safekeeping. A hearing was fixed for November 6, 1950, but was continued by agreement until November 22, 1950, when it was again continued until November 24, 1950, when it was further continued until November 25, 1950, at which time it was further continued to November 30, 1950, and on that date was further continued to December 6, 1950. After a hearing on December 6, 1950, defendant requested the court to dismiss the case because the act defining this crime provided no penalty, the act was unconstitutional because it denied defendant due process of law and because defendant did not know how to dress the carcasses and was unable to carry them to his barn some 1,500 feet away. The justice of the peace thereupon continued the case further so that she might have an opportunity to obtain information in regard to the questions raised by defendant. On January 3, 1951, the justice of the peace found defendant guilty and imposed a fine of $100 for each deer plus the cost of prosecution.

On January 6, 1951, defendant filed his petition for allowance of an appeal, which was allowed by the Hon. Henry Hipple, president judge, on January 9, 1951. At the argument in this case the parties, by stipulation, agreed to the following further facts: Defendant is a tall, thin boy weighing 115 pounds, 18 years of age, living with his parents on a small farm. About 1,500 feet from the dwelling house on the farm was a corn field owned by defendant's father containing corn stalked in shocks. On November 4, 1950, defendant killed three deer which were destroying some of this corn. Both parties admitted that the killing was legal.

Immediately after the killing defendant drove about two miles to a telephone to notify a game warden by

telephone. Due to the fact that the telephone line was apparently out of order defendant was unable to reach the game warden. This call was made at about 11 p.m., on November 4, 1950; defendant's uncontradicted testimony is that he did not know how to remove the entrails or clean out a deer and that he was unable to carry them some 200 to 300 feet to a truck or to carry them home some 1,500 feet away. No one was available to assist him. Defendant did not remove the entrails or dress the carcasses. Next morning a game warden arrived about 9 a.m., and cleaned out the carcasses and later defendant was arrested and charged as above set forth.

Defendant alleges in support of his appeal:

1. That "if defendant in fact, be guilty as charged, there is no punishment provided in the act."

2. "Can one be found guilty for not doing that which he could not do physically and knew not how to do?"

3. "Is the act constitutional regarding: (1): (a) Remove entrails from the animal; (b) Remove to a place of safekeeping the carcass."

With reference to the first of the above questions raised by defendant the Act of June 3, 1937, P. L. 1225, as amended, 34 PS §1331.724, in subsec. 5 provides:

"The person killing any such animal . . . shall within (12) twelve hours after killing, either orally or in writing, report such killing to the nearest game protector . . . and shall . . . immediately after killing, remove the entrails, and transfer the carcass to a place of safe keeping to be turned over to any game protector upon demand."

Subsection 7 of the same act provides: " . . . any person violating any of the several provisions of this section shall be liable for the fines hereinafter provided."

The penalties are provided in section 1311.731 of the Act of 1937, as amended June 24, 1939, P. L. 810, sec. 1, May 15, 1945, P. L. 517, sec. 2, and April 14, 1949, P. L. 434, sec. 4, 34 PS §1311.731. The penalties are set forth in 34 PS §1311.731 in subsections lettered (*a*) to (*q*), inclusive.

It is admitted by the parties and is evident from a reading of the act that subsections lettered (*a*) to (*p*) do not have any application to the instant case. Therefore, if any punishment for the crime here charged is provided it must be found in subsection (*q*) of the Act of June 3, 1937, as amended (see 34 PS §1311.731.)

Subsection (*q*), as amended, insofar as it applies to this case reads as follows:

"Except as otherwise herein provided, for hunting, or chasing, or catching, or taking, or killing, or wounding, or receiving, or delivering, or transporting, or shipping or using or concealing or assisting to conceal, or having in possession, or attempting to hunt for, catch, take, kill, wound, or transport contrary to this article, or regulations adopted thereunder by the commission, or for violating any of the provisions of this article relating to the shipping or transportation or removal out of this commonwealth, or relating to the buying or selling or bartering; . . .

"2. Each deer, one hundred dollars. . . ."

Appellant contends that nothing in subsection (*q*) can be construed as providing a penalty for the crime charged. The Commonwealth, on the other hand, contends that the words "for hunting . . . or taking . . . or killing contrary to this article" cover the situation here presented.

The Act of 1937, under which this prosecution was instituted, is a criminal statute and must, therefore, be strictly construed.

Appellant cites no authority in support of his claim that no penalty is provided for this offense and it is

quite probable that this question has not heretofore been raised and that there is, therefore, no case in which this point has been decided.

The Commonwealth, in its brief, cites the case of. Commonwealth v. Raymond, 7 D. & C. 30, in support of its contention that the words "for hunting . . . or taking . . . or killing . . . contrary to this article" is authority for its contention that section (q) does set forth a penalty for the crime here charged. That case was brought under the Act of May 24, 1923, P. L. 359, sec. 720, which requires a person killing a deer which was damaging crops to remove the entrails and hang up and properly care for the carcass for delivery to some charitable institution. Inasmuch as that case turned on another point, namely, the question of intent, and the conviction was not sustained, we do not see how it supports the contention of the Commonwealth.

The Act of May 24, 1923, P. L. 359, sec. 720, provides that:

"Failure to . . . dress and care for such carcass properly, shall be prima facie evidence that the purpose of such killing was not to relieve the destruction of property as herein contemplated."

Nothing is said in regard to intent in the Act of 1937. In the case of Commonwealth v. Raymond, supra, therefore, the court reversed the justice of the peace because the evidence offered by defendant showed that defendant who, as in this case did not know how to dress the carcass, showed that he had, in all other respects, complied with the law and that his actions overcame the presumption of guilty intent raised by the statute. We do not see how this case could be regarded as authority for the Commonwealth's contention.

Nor do we see how the words: "for hunting" sustain the Commonwealth's claim. Hunting, in its ordinary

sense means to try to find. In its application to wild game the word hunting includes trying to find and pursuing the same. There is no evidence of hunting or pursuing in this case. The deer were in plain sight in the corn field of appellant's father and so far as the record shows were shot while standing there eating corn.

The words "or taking" would certainly appear to have no application here as appellant legally shot the deer according to the admission of both parties and allowed them to remain where they fell. The words "to take" mean to gain possession by putting forth exertion; bring within one's own possession, power, or custody. Here appellant did none of these things, unless the mere legal shooting on his father's land and permitting them to remain there is a taking as contemplated by the act. The only exertion is the firing of the gun. The only possession, power or custody is that they are on the land. Defendant did nothing, put forth no effort to bring them there. The words "take" and "taking" as used in the act appear to have been used in their ordinary sense and nowhere do we find these words defined in such a manner as to apply to the actions of defendant here.

The Commonwealth contends that the words "contrary to this article" taken in connection with the words "for hunting", "or taking", "or killing" support its contention. As we hold that there was no hunting or taking, the only part of the statute which the words "contrary to this article" could possibly affect, would be the word killing. The question then arises were these deer killed contrary to this article, which means article 7 of the Act of 1937, P. L. 1225, supra.

Here we run into difficulties. The Act of 1937, article VII, sec. 724, subsec. 2, 34 PS §1311.724, subsec. 2, provides:

"Any elk, deer, or bear may be legally killed only through the use of a firearm which discharges a single ball or bullet not smaller than a twenty-five calibre, under the foregoing provisions, provided a report is made as hereinafter required and other conditions stipulated are complied with."

Subsection 5 of the same section of this act sets forth the conditions subsequent to be complied with by the person who does the killing. These conditions subsequent, insofar as they apply to this case, are: " . . . the person killing any such animal . . . shall within twelve hours after killing, either orally or in writing, report such killing to the nearest game protector or to the office of the commission at Harrisburg, setting forth the date and time of killing, the species killed, and in the case of . . . deer . . . the sex thereof, and shall . . . immediately after killing remove the entrails, and transfer the carcass to a place of safe keeping to be turned over to any game protector upon demand, except as hereinafter specified."

As the actual killing in this case is, by the Commonwealth's own admission, legal, how can the Commonwealth successfully claim that these deer were *killed* "contrary to this article"? Probably the Commonwealth meant that up to the point of the killing the acts of appellant were lawful but they were thereafter made unlawful by failure to comply with the conditions subsequent. To us this seems confusing— the killing is legal when done, then becomes illegal through subsequent acts of omission. However, the Commonwealth did not so state. A person certainly cannot anticipate when, if ever, a game animal will invade his land and destroy his property. Yet the land of any person on which there are trees, bushes, shrubbery or plants may at any time be invaded, especially by deer. In order that the law could be uniformly enforced it would be necessary for all such persons

to be able to dress the carcasses of an elk, a deer, a bear, a raccoon, a turkey, and various other animals specified in the act, as any of such persons, potentially, could be placed in the situation of this appellant. As only a very small portion of such people would ever have their land so invaded, it would be unreasonable to expect all of them to learn how to dress and preserve the carcasses of game animals and birds. Yet the Commonwealth contends that any person who contemplates that sometime in the future a deer may invade his land and destroy his property, must learn how to dress and preserve the carcass of such animal or bird.

Subsection (q) is a catch-all provision. The evident intent of it is to provide punishment for any acts for which a specific penalty is not provided in sections (a) to (p), inclusive. Subsection (q) specifically mentions at least some 17 acts to which the punishments therein prescribed apply, most, if not all of them, being the same acts for which punishment is provided in subsections (a) to (p), inclusive. Yet it does not specifically mention or prescribe any penalty for failing to dress the carcass or remove the same to a place for safe keeping. If the legislature intended to include the crimes here charged in this penal subsection it could have done so by merely inserting a few more words in the subsection. We believe the Act of 1937, supra, is not sufficiently clear and precise in a case of this kind. The failure to include specifically the crimes here charged in subsection (q), in our opinion, leaves the act without a penalty for them. This may have been due to an oversight but we must construe the law as it is written. Defendant is entitled to the benefit of any reasonable doubt and we seriously doubt that it can be said that this subsection prescribes, in language free from doubt, any punishment for these crimes. Construing this statute strictly we cannot read into it anything which is not specifically

set forth or which must be included by necessary implication. In our view no punishment for these crimes is provided, either specifically or by necessary implication, and we so hold.

In regard to the second question raised by appellant, namely: "Can one be found guilty for not doing that which he could not do physically and knew not how to do?"

The act permits the killing under the circumstances here present and then attaches certain conditions subsequent in order to make the killing legal. The sense of the act according to the Commonwealth's contention appears to be that a person may kill a deer or other animal which is destroying his crops, *if* he knows how to dress the carcass and has the ability, strength or means of hauling or carrying the carcass to a place for safe-keeping *if* he has such a place available. It makes no provision whatever for a situation, such as is here present, where compliance with the act is impossible through no fault of the person killing the animal. It permits such person to protect his property, then prescribes conditions subsequent, which, even though impossible of performance, renders his act unlawful. It gives the right to protect his property only to him who knows how to dress the carcass, has sufficient strength or other means of transporting the carcass to a place for safekeeping and has such a place available. This gives rise to an absurd situation. More extreme cases than the present one could arise, for instance, where storm or flood make roads impassable and destroy the lines of communication. Could a person justly be found guilty under such circumstances? Such a holding would be unreasonable and unjust, if not absurd.

"Where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning: 36 Cyc 1107. It is fundamental

that if, giving to the words of an act their literal or natural meaning, the conclusion reached would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended: Rossmiller v. State (Wis), 91 Am. St. Rep. 910, 913. It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is impossible and incapable of execution": Foster's Petition, 243 Pa. 92, 98.

"When strict compliance with the terms of the written law is impossible, compliance as near as can be, under judicial sanction, is allowed. This principle was recognized by Judge Endlich in his scholarly work on the Interpretation of Statutes. He says, section 441, page 627: 'Enactments which impose duties on conditions are, when these are not conditions precedent to the exercise of a jurisdiction, subject to the maxim that lex non cogit ad impossibilia aut inutilia. They are understood as dispensing with the performance of what is prescribed, when performance is impossible (e); for the law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling impossibilities, and this general exception is a general rule of statutory construction.' See, also, the same author, section 265, page 351. 'It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences, or is impossible and incapable of execution' ": Dalzell v. Kane et al., 321 Pa. 120.

Inasmuch as it was impossible for appellant here to dress the carcesses of these deer because he did not know how and it was also physically impossible for him

to transport them the 1,500 feet to the barn, but he did everything he could to comply with the law, we are of the opinion that he should not be held liable for not doing so, under these conditions, because the requirements of the statute are unjust and unreasonable under the facts in this case, on the authorities above cited.

As we must sustain the appeal for the reasons above set forth we do not consider it necessary to discuss or decide the other reasons set forth in appellant's brief.

*Decree*

And now, May 29, 1952, the appeal of defendant is sustained and defendant is adjudged not guilty of the offenses charged; the costs in this proceeding to be paid by Cameron County.